**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff, FLSA Collective Plaintiffs,*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

HORLEN LOPEZ,
*on behalf of himself, FLSA Collective Plaintiffs,*
*and the Class*

Plaintiff,

v.

ABUILT CONSTRUCTION LLC and
ALEX LUCERO,

Defendants.

Case No.:

**CLASS AND COLLECTIVE**
**ACTION COMPLAINT**

---

Plaintiff HORLEN LOPEZ ("Plaintiff"), on behalf of himself and others similarly situated, by and through his undersigned attorneys, hereby files this Class and Collective Action Complaint against Defendants ABUILT CONSTRUCTION LLC ("Corporate Defendant") and ALEX LUCERO ("Individual Defendant," and together with the Corporate Defendant, "Defendants"), and states as follows:

## INTRODUCTION

1.      Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), that he and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to time shaving; (2) unpaid overtime

1

premiums, due to unlawful straight rate compensation; (3) liquidated damages; and (4) attorneys' fees and costs.

2.      Plaintiff also alleges, pursuant to the New York Labor Law ("NYLL"), that he and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to time shaving; (2) unpaid overtime premiums, due to unlawful straight rate compensation; (3) unpaid call-in premiums; (4) liquidated damages for late payments of wages; (5) liquidated damages; (6) statutory penalties; and (7) attorneys' fees and costs.

3.      Plaintiff further alleges that Defendants breached their contract with Plaintiff and Class Members by failing to pay employer payroll taxes for Plaintiff and Class Members, as required by the Federal Insurance Contributions Act ("FICA").

4.      Moreover, by retaining these sums for themselves, Defendants unjustly enriched themselves at the expense of Plaintiff and Class Members.

## JURISDICTION AND VENUE

5.      The acts for which Plaintiff seeks relief took place in this district.

6.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

7.      Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391.

## PARTIES

8.      At all relevant times, Plaintiff HORLEN LOPEZ was a resident of New York County.

9.    ABUILT CONSTRUCTION LLC is a domestic limited liability company organized under the laws of the State of New Jersey, operating construction sites in New York and New Jersey.

10.    Individual Defendant ALEX LUCERO is the principal and owner of Corporate Defendant and has operational control of Corporate Defendant. Individual Defendant exercises the power to (and also delegates to managers and supervisors the power to): (i) fire and hire employees; (ii) supervise and control employee work schedules; (iii) determine the rate and method of pay; (iv) maintain employment records; and (v) otherwise effect the quality, terms and conditions of employment for Plaintiff, FLSA Collective Plaintiffs, and Class Members. At all relevant times, employees could complain to Individual Defendant regarding any of the terms of their employment, and he would have the authority to effect any changes to the quality and terms of their employment. Individual Defendant has authority over all employee-related decisions, including payroll, personnel, and wage and hour policies concerning Plaintiff, FLSA Collective Plaintiffs, and Class Members. Individual Defendant had the power and authority to supervise and control supervisors of Plaintiff, FLSA Collective Plaintiffs, and Class Members and could reprimand employees.

11.    At all relevant times, Individual Defendant exercised direct and actual functional control and oversight of the business and financial operations, as well as all other general affairs, of Corporate Defendant.

12.    At all relevant times, Corporate Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA, NYLL, and the regulations thereunder.

13.    At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs, and Class Members was directly essential to the business operated by Defendants.

3

14.    Plaintiff has fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

15.    Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all current and former non-exempt employees, including laborers, elevator operators, scaffolders, demolition workers, construction workers, and bricklayers, among others, employed by Defendants on or after the date that is six (6) years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

16.    At all relevant times, Plaintiff and FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them their proper wages, including: (i) unpaid wages, including overtime, due to time shaving; and (ii) unpaid overtime premiums due to unlawful straight rate compensation. Plaintiff's claims stated herein are essentially the same as those of FLSA Collective Plaintiffs.

17.    The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

**RULE 23 CLASS ALLEGATIONS – NEW YORK**

18.    Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("FRCP") Rule 23, on behalf of all non-exempt employees including laborers, elevator operators,

4

scaffolders, demolition workers, construction workers, and bricklayers, among others, employed by Defendants on or after the date that is six (6) years before the filing of the Complaint in this case as defined herein (the "Class Period").

19.    All said persons, including Plaintiff, are referred to herein as the "Class" or "Class Members." The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the title of the position held, and rates of pay for each Class Members are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under FRCP 23.

20.    The proposed Class is so numerous that a joinder of all Members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the calculation of that number rests are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) Members of the Class.

21.    Plaintiff's claims are typical of those claims that could be alleged by any Member of the Class, and the relief sought is typical of the relief that would be sought by each Member of the Class in separate actions. All the Class Members were subject to the same corporate practices of Defendants of: (i) unpaid wages, including overtime, due to time shaving; (ii) unpaid overtime premiums due to unlawful straight rate compensation; (iii) unpaid call-in premiums; (iv) failure to pay Class Members on a weekly basis as required by New York Labor Law; (v) failing to provide Class Members with proper wage statements with every payment of wages; and (vi) failing to provide proper wage notices to Class Members, at date of hiring and as legally required thereafter.

5

22.    Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and other Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

23.    Plaintiff is able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

24.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual Class Members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual Members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual Members of the Class, establishing incompatible standards of conduct for

Defendants and resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

25.     Defendants and other employers throughout the state violate the NYLL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide Class Members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

26.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members, including:

a.    Whether Defendants employed Plaintiff and the Class Members within the meaning of the NYLL;

b.    What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not properly pay Plaintiff and the Class Members;

c.    At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiff and the Class Members for their work;

d.    Whether Defendants failed to compensate Plaintiff and Class Members for all hours, including overtime, worked due to time shaving;

e.    Whether Defendants properly notified Plaintiff and the Class Members of their hourly rates and overtime rates;

f.    Whether Defendants paid Plaintiff and Class Members overtime premiums for all overtime hours they worked;

g.    Whether Defendants properly paid Plaintiff and Class Members call-in premiums under the NYLL;

h.    Whether Defendants paid Plaintiff and Class Members their lawful wages on a weekly basis per the requirements of NYLL §191;

i.    Whether Defendants provided Plaintiff and Class Members with proper wage and hour notices, at their dates of hiring and annually thereafter, per requirements of the NYLL; and

j.    Whether Defendants provided Plaintiff and Class Members with proper wage statements with each payment of wages, as required by the NYLL.

## STATEMENT OF FACTS

### Employment Background

27.    In or around February 2025, Defendants hired Plaintiff as a laborer on construction sites across New York City. Plaintiff's employment with Defendants was terminated in or around February 2026.

28.    At all relevant times, Plaintiff was compensated by Defendants in cash at an hourly rate of $35.00 per hour. FLSA Collective Plaintiffs and Class Members were compensated by Defendants in cash at similar hourly rates.

29.    Throughout his employment, Defendants scheduled Plaintiff to work five (5) days per week, from 7:30 a.m. to 4:00 p.m., for eight and a half (8.5) hours per day. In total, Plaintiff was scheduled to work approximately forty two and a half (42.5) hours per week during this period.

However, approximately twice per month, Defendants required Plaintiff to work a Sunday from 7:30 a.m. to 4:00 p.m. FLSA Collective Plaintiffs and Class Members worked similar hours.

**Time Shaving**

30.     Throughout his employment, Plaintiff was time shaved and not compensated for all hours worked. Specifically, approximately twice per week, Defendants required Plaintiff to stay at work twenty (20) minutes after the end of his scheduled shift to complete a task. However, Defendants only ever compensated Plaintiff for his scheduled hours. FLSA Collective Plaintiffs and Class Members were similarly compensated only for their scheduled hours rather than their actual amount of hours worked.

31.     At all relevant times, Plaintiff was further time shaved by Defendants. Specifically, Defendants required Plaintiff to arrive to work at 7:30 a.m. However, approximately once per week, Defendants failed to deliver the construction material needed for the day by 7:30 a.m. and Plaintiff and his co-workers would then have to wait outside of the job site until the material arrived. This could take anywhere from one (1) to three (3) hours. Plaintiff was not compensated for these hours. FLSA Collective Plaintiffs and Class Members were similarly not compensated for hours spent waiting for construction material to arrive.

32.     At all relevant times, Defendants knowingly and willfully operated their business with a policy of failing to pay wages, including overtime, to Plaintiff, FLSA Collective Plaintiffs, and Class Members for all hours they worked due to Defendants' policy of time-shaving, in violation of the FLSA and the NYLL.

**Unpaid Overtime Premiums**

33.     At all relevant times, Defendants failed to pay overtime premiums to Plaintiff for all hours worked over forty (40) hours per workweek. Specifically, Defendants compensated Plaintiff at a straight hourly rate of $35.00 per hour for all hours worked, including the hours of overtime Plaintiff routinely worked per week.

34.     Further, Defendants required Plaintiff to work approximately two (2) Sundays per month. Because Plaintiff already worked 42.5 hours per week, the additional hours worked were overtime hours. However, Defendants compensated Plaintiff for this additional day at his regular hourly rate. As a result, Plaintiff's overtime hours were compensated at a straight time rate, instead of at 1.50 times his regular rate.

35.     At all relevant times, Defendants similarly compensated FLSA Collective Plaintiffs and Class Members at straight hourly rates and failed to pay them overtime premiums for all their hours worked over forty (40) hours per workweek.

36.     Defendants knowingly and willfully operated their business with a policy of not compensating overtime premiums to Plaintiff, FLSA Collective Plaintiffs, and Class Members, in violation of the FLSA and the NYLL.

**Call-In Pay**

37.     Throughout Plaintiff's employment, Defendants sent Plaintiff home immediately after he arrived at a job site approximately twice per month, due to work stoppages. Despite this, Defendants never paid Plaintiff any call-in pay premiums, even though the NYLL requires an employer to pay an employee in a miscellaneous industry for a minimum of four (4) hours at the basic minimum wage on any day the employee is called in to work, regardless of when he is sent

10

home. Defendants similarly sent Class Members home before they completed four (4) hours of work, without paying them call-in pay premium.

38.     At all relevant times, Defendants knowingly and willfully operated their business with a policy of failing to pay call-in pay premiums to Plaintiff and Class Members for all their shifts worked under four (4) hours, in violation of the NYLL.

**Late Payment of Wages**

39.     At all relevant times, Defendants failed to provide Plaintiff and Class Members with timely payments of wages, in violation of the NYLL.

40.     Plaintiff and Class Members are manual workers. Plaintiff and Class Members spent the majority of their workdays performing duties that required sustained physical effort. For Plaintiff, these duties included lifting, hauling, unloading materials, leveling, bricklaying, operating power tools and heavy machinery, and building, among others, during their entire eight and a half (8.5) hour days. Due to their status as manual workers, Plaintiff and Class Members are entitled to weekly compensation pursuant to NYLL § 191(1)(a).

41.     However, Defendants failed to pay Plaintiff within seven (7) days of the end of the week in which Plaintiff earned his wages, in violation of NYLL § 191(1)(a)(i). Specifically, during the last two months of Plaintiff's employment, his paychecks were one (1) month late. Defendants also routinely compensated Class Members over one (1) month late. This delayed payment caused Plaintiff and Class Members to struggle to timely pay bills and other financial obligations. When Plaintiff and Class Members were paid late, Defendants still made them sign documents as if they were paid on time.

42.     Therefore, Plaintiff and Class Members are owed liquidated damages equal to the late payment of wages and accrued interest on the delayed payments.

11

43.    Defendants knowingly and willfully failed to timely compensate Plaintiff and Class Members, in violation of NYLL.

**Breach of Contract and Unjust Enrichment**

44.    When Defendants hired Plaintiff and Class Members, the parties entered into a contract. The covenant of good faith and fair dealing is implicit in every contract under New York law.

45.    At all relevant times, Defendants maintained a policy and practice of paying Plaintiff and Class Members entirely in cash. Defendants failed to properly record, account for, and report to the IRS all monies paid to Plaintiff and Class Members.

46.    Because Defendants paid Plaintiff and Class Members entirely in cash, upon information and belief, Defendants failed to file any W-2 forms on behalf of Plaintiff and Class Members and failed to make any FICA contributions for their wages.

47.    In failing to provide proper W-2 forms, Defendants breached their contract with Plaintiff and Class Members to pay the employer's share of Social Security and Medicare taxes for each employee.

48.    Further, Defendants were unjustly enriched when they kept for themselves money that should have been paid to the Internal Revenue Service as Defendants' employer FICA contributions. This came at the expense of Plaintiff and Class Members because they will either (1) be liable to the IRS for the employer's share or (2) upon retirement, suffer diminished Social Security and Medicare benefits because they did not pay enough into the system.

49.    The employer's share of Social Security taxes is 6.2%. The employer's share of Medicare taxes is 1.45%. Accordingly, Defendants must compensate Plaintiff and Class Members 7.65% of all their earnings from Defendants.

12

**Violations of Wage Theft Prevention Act ("WTPA")**

50.    At all relevant times, Defendants failed to provide accurate wage notices and wage statements to Plaintiff and Class Members, in violation of the Wage Theft Prevention Act ("WTPA"), incorporated into the NYLL.

51.    At all relevant times, Defendants paid Plaintiff and Class Members in cash and failed to provide any paystubs to them with every weekly payment.

52.    In failing to provide wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. Following the decision in *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 303 (2d Cir. 2024), courts have generally held that there is no categorical bar on Article III standing for WTPA claims. Instead, the Second Circuit found that "[t]he lack of such notices and statements might impair 'an employee's ability to seek relief for violations they may not have information about'" to an extent sufficient to support standing.

53.    New York courts continue to find sufficient standing to support these claims.  One such court stated the following at summary judgment:

"Here, the Court determines that Plaintiffs have adequately alleged and established actual and concrete downstream harm as a result of Defendants' failure to provide the required wage and hour notices and wage statements. Plaintiffs have shown that "Defendants' violations impaired their ability to seek relief due to a lack of information." More than that, Plaintiffs have proved, and the Court agrees, that Defendants' failure to maintain proper wage statements because of their automatic meal-break deduction and eight-hour rounding led Plaintiffs to lose wages. These are exactly the types of harm that the Second Circuit considered to be sufficient to establish standing in *Guthrie*. Therefore, the Court finds for Plaintiffs on this issue."

*Sanchez v. Clipper Realty, Inc.*, 2026 U.S. Dist. LEXIS 36716, *61 (S.D.N.Y. February 23, 2026) (internal citations removed).

54.    Here, Defendants' conduct has led to exactly the kind of injury contemplated in *Guthrie* and *Sanchez*. By failing to inform Plaintiff and Class Members of the actual hours that

they worked by not providing them with wage statements, Defendants were able to hide their wrongdoing, as Plaintiff and Class Members were unaware of the fact that they were being underpaid. Had Defendants provided proper wage statements to Plaintiff and Class Members which accurately listed the total number of hours Plaintiff and Class Members actually worked, as required by law, Defendants would have had to either (a) increase the wages to correspond to the hours actually worked or (b) forthrightly acknowledge, by way of the wage statement, that the employee's wages did *not* correspond to the hours the employee actually worked.

55. By failing to report Plaintiff's and Class Members' hours, Defendants were able to reduce employee earnings, and Defendants' contribution to those earnings, that they later reported to the IRS through the employees' W-2 form, as such information is derived from the information on employees' wage statements. The effect of reporting reduced wages on an employee's W-2 is, in turn, to reduce the amount of benefits available to the employee—such as unemployment benefits and social security benefits—as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. As a result, Plaintiff and Class Members were irreversibly injured with respect to their benefits (including social security benefits)—a fact which Defendants were able to hide from them by failing to provide them with proper wage statements.

56. Furthermore, Defendants failed to provide any wage notices to Plaintiff or Class Members. Even if Defendants provided wage notices, the wage notices would have been inadequate as they would have failed to provide employees' actual pay rates, which were reduced by Defendants' time shaving. Once again, had Defendants provided Plaintiff and Class Members with wage notices that communicated the rates that Defendants actually intended to pay them, Plaintiff and Class Members would have been able to contest the unfair pay rates or choose not to

14

take a job with Defendants. Instead, due to Defendants' intentional hiding of that information, Plaintiff and Class Members accepted their employments with Defendants without the knowledge that Defendants did not intend to be bound to their promised pay rates.

57.     Defendants knowingly and willfully operated their business with a policy of failing to provide Plaintiff and Class Members with wage notices and accurate wage statements, in violation of the NYLL.

58.     Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs, and Class Members in this litigation and has agreed to pay the firm a reasonable fee for its services if Plaintiff prevails.

## STATEMENT OF CLAIM

### COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACT

59.     Plaintiff realleges and incorporates all the foregoing paragraphs as if fully set forth herein.

60.     At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

61.     At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

62.     At all relevant times, Corporate Defendant had gross annual revenues in excess of $500,000.

15

63.    At all relevant times, Defendants had a policy and practice of failing to pay Plaintiff and FLSA Collective Plaintiffs their wages for all hours worked due to time shaving, in violation of the FLSA.

64.    At all relevant times, Defendants had a policy and practice that failed to pay Plaintiff and FLSA Collective Plaintiffs their properly owed overtime premiums for all hours worked over forty (40) hours per workweek, due to a policy of unlawful straight rate compensation.

65.    Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

66.    Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs their proper wages, including overtime, when Defendants knew or should have known such was due.

67.    Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

68.    As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e. double) damages pursuant to the FLSA.

69.    Due to the intentional, willful and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages due to time shaving; unpaid overtime premiums; plus an equal amount as liquidated damages.

70.    Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II

## <u>VIOLATION OF THE NEW YORK LABOR LAW</u>

71.    Plaintiff realleges and incorporates all the foregoing paragraphs as if fully set forth herein.

72.    At all relevant times, Plaintiff and Class Members were employed by Defendants within the meaning of the NYLL §§ 2 and 651.

73.    Defendants knowingly and willfully failed to pay Plaintiff and Class Members all wages owed, including overtime, due to a policy of time shaving, in violation of the NYLL.

74.    Defendants knowingly and willfully violated Plaintiff's and Class Members' rights by failing to pay them any overtime premiums, due to a policy of unlawful straight rate compensation.

75.    Defendants knowingly and willfully failed to compensate Plaintiff and Class Members with call-in pay premiums for all shifts worked lasting less than four (4) hours, in violation of the NYLL.

76.    Defendants willfully violated Plaintiff's and Class Members' rights by failing to pay them their wages within seven days of the end of the week in which they were earned, in violation of NYLL § 191(1)(a)(i).

77.    At all relevant times, Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements as required by NYLL. Defendants are required to provide accurate and proper information on wage statements issued to employees in

accordance with the NYLL. Defendants failed to satisfy the requirements under the NYLL because they did not provide any wage statements.

78.    Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff and Class Members with proper wage notices, on the date of hiring and on dates of all wage changes thereafter, as required under NYLL.

79.    Due to the Defendants' NYLL violations, Plaintiff and Class Members are entitled to recover from Defendants unpaid wages, including overtime, due to time shaving; unpaid overtime premiums; call-in pay; damages for late payments; liquidated damages; statutory penalties; attorneys' fees and costs and disbursements of the action, pursuant to the NYLL.

## COUNT III

### BREACH OF CONTRACT

80.    Plaintiff realleges and incorporates all the foregoing paragraphs as if fully set forth herein and further alleges as follows.

81.    "In New York, all contracts imply a covenant of good faith and fair dealing in the course of performance … This covenant embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract … [T]he  duties of good faith and fair dealing … encompass any promises which a reasonable person in the position of the promisee would be justified in understanding were included [in the contract]." *511 W. 232nd Owners Corp. v. Jennifer Realty Co*., 98 N.Y.2d 144, 153, 773 N.E.2d 496, 500-501, 746 N.Y.S.2d 131, 135-136, 2002 N.Y. LEXIS 1579, *10-11(2002).

82.    Defendants breached this duty, and consequently the parties' contract, when they paid Plaintiff and Class Members in cash without withholdings or deductions, and further failed to

18

provide proper W-2 forms. As a result, Plaintiff and Class Members lost part of the benefit of the bargain for which they contracted, including Social Security and Medicare taxes, suffering a loss in the amount of the FICA taxes that Defendants should have, but did not, pay on their behalf.

COUNT IV

**UNJUST ENRICHMENT**

83.     Plaintiff realleges and incorporates all the foregoing paragraphs as if fully set forth herein and further alleges as follows.

84.     To state a claim for unjust enrichment, a plaintiff must allege that: "(1) the [defendant] was enriched, (2) at [plaintiff's] expense, and (3) that it is against equity and good conscience to permit the [defendant] to retain what is sought to be recovered." *Georgia Malone & Co., Inc. v Rieder*, 19 NY3d 511, 516, 973 NE2d 743, 950 NYS2d 333 (2012) (internal quotations omitted).

85.     Defendants were unjustly enriched when they kept for themselves money that should have been paid to the Internal Revenue Service as Defendants' employer FICA contribution. Such came at the expense of Plaintiff and Class Members because they will either: (1) be liable to the IRS for the employer's share, or (2) upon retirement, suffer from diminished Social Security and Medicare benefits because they did not pay enough into the system.

86.     Accordingly, all sums that Defendants should have paid to the IRS should be disgorged from Defendants and transferred to Plaintiff and Class Members.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of himself, FLSA Collective Plaintiffs, and Class Members, respectfully requests that this Court grant the following relief:

19

a.  A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

b.  An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.  An award of unpaid wages, including overtime, due to time shaving, due under the FLSA and the NYLL;

d.  An award of unpaid overtime premiums as a result of Defendants' unlawful straight rate compensation, due under the FLSA and the NYLL;

e.  An award of unpaid call-in pay premiums, due under the NYLL;

f.  An award of damages for late payments of wages, including interest and liquidated damages, due to Defendants' willful failure to pay Plaintiff and Class Members on a weekly basis as required under the NYLL;

g.  An award of statutory penalties as a result of Defendants' failure to comply with New York Labor Law wage notice and wage statement requirements;

h.  Contractual damages for Defendants' failure to keep their promise to abide by the Internal Revenue Code and fund Plaintiff's and Class Members' retirement through FICA contributions;

i.  Disgorgement from Defendants of all illegally retained sums that should have gone towards Plaintiff's and Class Members' FICA contributions;

j.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages pursuant to 29 U.S.C. § 216;

k.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages pursuant to the NYLL;

l.  An award of statutory penalties, prejudgment and post judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

m.  Designation of Plaintiff as the Representative of the FLSA Collective Plaintiffs;

n.  Designation of this action as a class action pursuant to F.R.C.P. 23;

o.  Designation of Plaintiff as Representative of the Class; and

p.  Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.


Dated: July 13, 2026          Respectfully submitted,
New York, New York            By:   */s/ C.K. Lee*
                                    C.K. Lee, Esq.

                              **LEE LITIGATION GROUP, PLLC**
                              C.K. Lee (CL 4086)
                              Anne Seelig (AS 3976)
                              148 West 24th Street, 8th Floor
                              New York, NY 10011
                              Tel.: 212-465-1188
                              Fax: 212-465-1181
                              *Attorneys for Plaintiffs,*
                              *FLSA Collective Plaintiffs,*
                              *and the Class*